THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE F. H. SMITH COMPANY, INC., and Others, Defendants.*

Supreme Court, Erie County, April 7, 1930.

* Mod., 230 App. Div. 268.

*Hamilton Ward, Attorney-General [Leonard R. Lipowicz and Richard T. Anderson of counsel], for the People.*

*Frank W. Raichle and Carlos C. Alden,* for the Fairfax Apartment Corporation of Buffalo, N. Y., and other defendants.

*Love & Keating [George P. Keating and S. Wallace Dempsey of counsel],* for The F. H. Smith Company, Inc.

HARRIS, J. This action was tried before me at an Equity Term held in Erie county in November, 1929. The action is brought in the name of the People of the State of New York by the Attorney-General, by virtue of the provisions of sections 353 and 353-a of the General Business Law* of the State, for the purpose of enforcing the provisions of article XXIII-A of such General Business Law, which article is commonly known as the Martin Act, and which act further belongs to that class of legislation known as the " Blue Sky Laws." The Legislature of the State, in enact-

---

*Section 353 was added by Laws of 1921, chapter 649, and amended by Laws of 1926, chapter 617; section 353-a was added by Laws of 1925, chapter 239, and amended by Laws of 1926, chapter 617.— [REP.

ing article XXIII-A of the General Business Law, intended to prevent, in the offering for sale or in the sale of bonds or securities or other commodities, all deceitful practices contrary to the plain rules of common honesty. (*People* v. *Federated Radio Corp.*, 244 N. Y. 33.) And the questions involved in this action are whether the defendants have, by fraudulent means or deceitful practices, sold, or endeavored to sell, bonds or securities by means of fraud.

The trial of this action developed the following testimony:

That prior to the commencement of this action, and in or about the year 1926, there was erected on Delaware avenue in the city of Buffalo, an apartment house known as Cleveland Hall. On such apartment house there was placed, in the year 1926, a first mortgage of $1,200,000, on which bonds were issued, and were offered for sale by the defendant The F. H. Smith Company, Inc., a foreign corporation. Subsequently, the defendant The Fairfax Apartment Corporation of Buffalo, N. Y. (a Delaware corporation), decided to change such apartment house into an apartment hotel, and in refinancing the project there was given by the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., to certain trustees a trust deed of the premises, which, in effect, was to become a first and refunding mortgage on such premises to the amount of $1,550,000, under and by virtue of which trust deed there was to be issued to the defendant The F. H. Smith Company, Inc., bonds to that amount, $350,000 of which were to be returned to the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., and the remainder of which, to wit, the sum of $1,200,000, was to be sold or exchanged so as to refund the foregoing mentioned mortgage of $1,200,000. The defendant The F. H. Smith Company, Inc., was made the depository and seller of such bonds under such trust deed. Such bonds were offered for sale within the State of New York, and certain sales of such bonds were made. The Attorney-General, being of the opinion that the advertisement and sale of such bonds constituted a violation of article 23-A of the General Business Law (added by Laws of 1921, chap. 649, as amd.), endeavored to conduct an investigation, as he was empowered by section 352 of such act (added by Laws of 1921, chap. 649, as amd. by Laws of 1927, chap. 365), but was unable to secure the books and information that he demanded of the defendant The F. H. Smith Company, Inc., and, therefore, he brought this action and secured a temporary injunction, as provided for in similar situations by the so-called Martin Act. The Attorney-General now seeks the final relief of a permanent injunction against the defendants further advertising or selling the bonds above referred to, and he also seeks the appointment of a receiver, as provided for in section 353-a

of the act. On the beginning of the progress of sale of the bonds covered by the $1,500,000 trust deed, there was issued by the defendant The F. H. Smith Company, Inc., a prospectus or circular introduced into evidence as Exhibit 2. This prospectus or circular, besides containing pictures of the building of the Fairfax Hotel and its surroundings, contains on its face a summary description of the bonds, containing the following:

" APPRAISALS

" The Property has been Appraised by:

" J. R. Ingham & Co., Inc., Realtors, Buffalo,
N. Y. ....................................... $2,250,000
" Philip M. Jullien, an experienced architect of
Washington, D. C. ............................ $2,245,000."

In another portion of such circular there is published a letter written by the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., the portion of which is pertinent to this action being as follows:

" THE F. H. SMITH COMPANY,
" Washington, D. C.

" GENTLEMEN.— We take pleasure in giving you the following information concerning the issue of $1,550,000 of First and Refunding Mortgage $6\frac{1}{2}\%$ Coupon Gold Bonds of The Fairfax Apartment Corporation of Buffalo.

" SECURITY

" These bonds will, in the opinion of counsel, be secured upon completion of present financing by a first and refunding mortgage of $1,550,000 *on the land and ten-story and basement apartment hotel building (including furniture, fixtures and equipment)*, known as The Fairfax of Buffalo." (The italics are those of the court.)

Also included in such circular was a letter from J. R. Ingham & Co., Inc., and one from Philip M. Jullien, which letters are as follows:

" We have made a survey of the 10-story full fire-proof building located at No. 715 Delaware Avenue, Buffalo, New York, and now known as the Fairfax Apartment Hotel. We believe the structure to be well conceived, and excellent in plan and construction.

" The building has a frontage of 110 feet on Delaware Avenue, the most important residential thoroughfare in Buffalo, and the property in addition to being in the center of the finest residential section is within easy access to the shopping, financial and theater districts. The Delaware Avenue bus passes the door and there are two street car lines within easy walking distance.

" Because of the recent building development on a large scale, land values on this boulevard have been enhancing steadily and should continue to do so.

" On schedule of rentals of the operator we estimate the gross annual income of the property after making a deduction of 10 per cent for vacancies at $240,000 and using earnings plus other considerations as a basis, we therefore appraise the property as a going apartment hotel at a figure of $2,250,000.

" Very truly yours,

" J. R. INGHAM & CO., INC.,

" By J. R. INGHAM, *President.*"

The letter of appraisal by Philip M. Jullien states:

" In accordance with your request, I have made a survey of the 10-story steel and concrete fire-proof apartment building, known as The Fairfax Apartment Hotel, located at 715 Delaware Avenue, Buffalo, New York, and find the building to be exceedingly well built.

" Fronting 110 feet on Delaware Avenue with a depth of approximately 220 feet, the site on which this building stands contains approximately 24,200 square feet. The building is constructed of steel and concrete with an attractive exterior and contains modern equipment throughout. At the time of examination no depreciation was observed in either the building, furnishings or equipment.

" This property is now being operated as an apartment hotel, and on this basis the estimated gross annual earnings will be $265,000.00 per annum.

" Considering the earnings and all other elements, I appraise the property as a ' going ' concern at $2,245,000.

" Easy access to the shopping, financial and theater districts, as well as other sections of the city, is afforded by bus and street car lines, making this section most desirable.

" Yours very truly,

" PHILIP M. JULLIEN."

Such prospectus or circular further contained the following:

" EARNINGS

" Based on experience in the operation of similar buildings, the owners estimate the gross annual earnings of The Fairfax of Buffalo will be $267,540.00 and the total operating charges, including taxes, insurance and upkeep, $87,075.94, leaving an estimated annual net income (after payment of above charges) of $180,464.06."

Having his attention drawn to the use of the foregoing letter in connection with the appraisal and figures given on the first page of such circular as above quoted, Mr. Ingham wrote to the defendant The F. H. Smith Company, Inc., stating, in substance, that the appraisal of his company had been qualified, and that the failure to set out the qualifications was an unauthorized use of such appraisal,

and insisting that the use of the name J. R. Ingham & Co., Inc., cease. Following this there was issued and used for the purpose of making sales, another circular, introduced into evidence as Exhibit 5, which circular was exactly like that known as Exhibit 2, except that on the front page of such circular the words

" APPRAISALS
" The property has been appraised by
" J. R. Ingham & Co., Realtors, Buffalo, N. Y... $2,250,000
" Philip M. Jullien, an experienced architect of
Washington, D. C............................... $2,245,000 "

were omitted, and there was inserted in place thereof the following:
" APPRAISALS
" Valuation appraisals of The Fairfax of Buffalo are set forth within."

And except that such Exhibit 5 contained a statement that the original issue of $1,200,000 had been reduced by retirement so that there was now outstanding only $673,300 thereof, from which it may be fairly inferred that there had been marketed of the $1,500,000 issue the sum of $526,700. Mr. Jullien did not testify on the trial. Mr. Ingham did testify, and from his testimony it may be deduced that his examination of the physical properties of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., was more or less a cursory one, and that he based his appraisal upon the prospect of earnings furnished by the defendant The Fairfax Apartment Corporation of Buffalo, N. Y.

The trust deed under which there was issued, or proposed to be issued, and sold the sum of $1,550,000 of bonds, included as security the building in question, its equipment, its rents and its profits, but it will be noted that in neither Exhibit 5 nor Exhibit 6 is there any mention of rents and profits as security underlying the trust deed and the bonds issued with its support. Various testimony was given as to the actual value of the physical properties, to wit, land, buildings, furniture and equipment of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y. The assessed valuation of the city of Buffalo on the land is $33,270, and upon the improvements, $790,480. The building has no basement. Various realtors, more or less well versed in values of real property in the vicinity of that in question, gave appraisals of the actual present value of the land and improvements, and such valuations range from a minimum of approximately $900,000 to a maximum of $1,400,000, including within the last named figure the value of the furnishings and equipment at $163,000. So it may be safe to assume that the actual value of the physical properties of the

defendant The Fairfax Apartment Corporation of Buffalo, N. Y., at the time of the investigation made by the Attorney-General and at the time of the commencement and trial of this action, was not more than $1,400,000, and such physical property values are all the physical property values that are covered by the trust deed under which there was issued, or proposed to be issued, $1,550,000 of bonds. Various witnesses place the value of the apartment hotel in question at figures ranging as high as $2,025,000, but this top valuation was reached in the following manner by the defendants: Large allowances were made for promotion and financing expenses and advertisements, and for the additional value of the hotel as a going concern; and then further proof was made to the effect that such large valuation was permissible, due to the future estimated earnings of the property in question. Interesting testimony was given forecasting such earnings, and the attention of the court was drawn to the claim that the National Real Estate Board had adopted standards of valuation for appraisal of investment property (to which class of property it is contended that the one in question belongs), which method of appraisal justified a valuation of the property in question at one hundred times its monthly gross earnings.

The defendants further gave proof to the effect that such gross earnings would not reach its normal amount (which normal amount was the basis taken for making the highest appraisal above mentioned) until the property in question had been in operation as a hotel for three years, which, as to date, would place that event at some time after the year 1931. The proof was that at present the property of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., and its conduct, showed a deficit of income, so far as expense was concerned, which would sustain a finding that such property was now being conducted at a loss of at least $50,000 a year.

Summarized, the valuation of the property of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., which the defendant would have the court find as the basis for the issuance of $1,500,000 worth of bonds, would be physical values of not more than $1,400,000 (and in the court's mind less), plus expenses of promotion and financing and hopes for the future. This is a type and nature of the investment presented by the defendant The F. H. Smith Company, Inc., on behalf of defendant The Fairfax Apartment Corporation of Buffalo, N. Y., to the general public, and which is attacked by the Attorney-General on behalf of the People of the State of New York as a violation of the Martin Act.

The court will endeavor to apply the test of common sense business practice to this situation. The usual loan made in good times

under best circumstances by an insurance company or a bank upon similar property, would be, at the most, but sixty-five per cent of the values of the physical property. It may be that private parties would offer a larger loan, but there would be in such offer an element of speculation induced by higher rates of interest. And such banks and insurance companies and private parties would have an opportunity to make, and would make, a very careful examination of the property and the probabilities of its success. This opportunity is not usually given to or taken advantage of by persons buying bonds sold by advertisement. They usually rely upon the contents of the circulars and prospecti issued by the financing company and by the owners of the property. No one of these classes of investors, banks, insurance companies or private loanors, to the mind of this court, would accept as security for such investment, liberal costs of promotion, financing and advertising and forecasts of earnings projected far into the future for their realization. Such investors would want concrete, physical security, and are entitled to such. A purchaser of property, who needed or desired the property, might be induced to pay for such property the value of the physical assets plus the costs of developing and bringing the property along to the time of sale. An estimate of future earnings, carefully made and investigated, might be of value to prospective stockholders. But we have here offered for sale, under the contents of both prospecti above referred to, Exhibits 2 and 5, $1,550,000 worth of bonds secured by physical property which is worth considerably less than the issue offered for sale.

It has been held in *People* v. *Federal Radio Corp.* (*supra*) that the terms " fraud " and " fraudulent practice and device," as used in the Martin Act, did not of necessity mean intentional fraud. It could mean what is called in the above opinion written in such case, " equitable fraud," and could include misrepresentation and concealment of material facts without intention to defraud. In the action at bar the court is of the opinion that in issuing the prospecti, Exhibits 2 and 5, and in promoting, advertising, offering for sale and selling the issue in question, the defendant The F. H. Smith Company, Inc., with the consent and aid of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., misrepresented the value, for loaning purposes, of the properties of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., and concealed from the public, to whom such bonds were offered, the fact that the appraisal was largely based upon intangible assets, including hopes for the more or less distant future, which hopes might be dissipated by poor business, poor management or many other eventualities which can occur in the conduct of a hotel.

The plaintiff is entitled to the relief sought by the Attorney-General of the State, by means of a permanent injunction against the advertisement and sale of the bonds herein referred to.

The court now passes to the question of the application of the Attorney-General for the appointment of a receiver. The Martin Act, in section 353-a thereof, provides as follows: "In any action brought by the attorney-general as provided in this article, the court at any stage of the proceedings may appoint a receiver of any and all property derived by the defendant or defendants or any of them by means of any such fraudulent practices, including also all property with which such property has been mingled if such property cannot be identified in kind because of such commingling, together with any or all books of account and papers relating to the same. The judgment entered in such action may provide that such receiver shall take title to any or all such property and books of account and papers relating to the same and liquidate such property or any part thereof for the benefit of all persons intervening in the said action and establishing an interest in such property. The judgment may also provide that all such property the title to or interest in which has not been established in such action by intervenors or otherwise by due process to be in a person or persons other than defendant or defendants shall be returned to the defendant or defendants as their interest may appear. Such receiver shall be subject to all the duties of receivers appointed under the provisions of the civil practice act as far as practicable. In any action brought by the attorney-general as provided in this article the court may grant such other and further relief as may be proper."

It has been argued on behalf of the defendants that there has been proven to the court the sale of only $3,500 of the bonds of the issue in question and that only on behalf of or by the defendant The F. H. Smith Company, Inc., and that if a receiver is to be appointed, the appointment of such receiver should be for the benefit of the owners of such $3,500 worth of bonds, and that such receivership should apply only to the defendant The F. H. Smith Company, Inc. The court does not agree with this. There is proof from Exhibit 5 that the sum of $526,700 worth of bonds have been issued; the property which has been used as the attraction for investors is situated within the State; the defendant The F. H. Smith Company, Inc., has refused the lawful requests and directions of the State; the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., has furnished to the defendant The F. H. Smith Company, Inc., means for perpetrating the fraud complained against, both by the making of the trust deed and the issuance of the letter to The F. H. Smith Company, Inc., from The Fairfax

Apartment Corporation of Buffalo, N. Y., contained in Exhibits 2 and 5 hereinbefore quoted in part, and by at least aiding in securing the appraisal made by J. R. Ingham & Co., Inc. The fact that there has been issued over a half million dollars worth of bonds must lead to the conclusion that the funds secured thereby are mingled with the property of the defendant The Fairfax Apartment Corporation of Buffalo, N. Y., for whose benefit and financing such bond issue was made. The court is of the opinion that, in order to give full force and effect to the relief intended by the Martin Act, it is proper to appoint a receiver for each one of the defendants The Fairfax Apartment Corporation of Buffalo, N. Y., and The F. H. Smith Company, Inc., and to give to such receivers the power to take title of the property, books and accounts and papers of each of the defendants The Fairfax Apartment Corporation of Buffalo, N. Y., and The F. H. Smith Company, Inc., so that such properties may be liquidated to the benefit of the persons who have been led to make investments by the fraudulent scheme of said defendants The Fairfax Apartment Corporation of Buffalo, N. Y., and The F. H. Smith Company, Inc.

There is to be submitted to me, not later than April 14, 1930, a decision herein involving the foregoing findings and conclusions, and at that time I will sign such decision and place therein the names of the receivers and fix the amounts of their bonds.